UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:09-00227 |
| | ) | |
| BRIAN DAVID BRUMBACH | ) | |

**MEMORANDUM AND ORDER**

Defendant Brumbach has filed his motion (Docket Entry No. 40) seeking a transfer to an alternative detention facility, or, in the alternative, release from detention. As grounds for his motion, defendant Brumbach alleges that "the conditions are so deplorable in Robertson County Jail that Defendant is unable to make knowing and voluntary decisions regarding his criminal charges." (Docket Entry No. 40 at 1).

The Government has filed a response (Docket Entry No. 43) stating that, while it does not concede the issues raised by defendant or the merits of his arguments, the Government does not oppose his transfer to an alternative detention facility.

Defendant's motion has been referred to the undersigned Magistrate Judge for an evidentiary hearing and decision (Docket Entry No. 41).

**The Evidentiary Hearing**

As directed by the Chief Judge, the undersigned Magistrate Judge conducted an evidentiary hearing on August 17, 2010. Defendant Brumbach testified at length concerning the

conditions of confinement at the Robertson County Detention Facility (RCDF), and his wife testified briefly. The Government called no witnesses.

During his testimony, defendant Brumbach complained about several different conditions of detention at RCDF, as follows:

**Food Service**. Defendant Brumbach testified that he has been confined at RCDF since October 1, 2009. He testified that the food portions have been inadequate and the menu has been lacking in variety at the facility since the beginning of his confinement. Defendant testified that the typical breakfast served at RCDF consists of two pancakes approximately 4 inches in diameter, a small serving of cornflakes, a slice of bologna approximately 3 inches in diameter, one half of an orange, and a half pint of milk. He reported that a typical lunch consists of 5 small meatballs, prepared from "turkey meat," with gravy, boiled cabbage, instant mashed potatoes with gravy, a small biscuit or serving of cornbread, whipped butter and 8 ounces of Koolaid.

Defendant Brumbach further testified that a typical dinner meal served at RCDF consists of sliced turkey loaf or, occasionally, sliced ham approximately 4 inches in diameter and one eighth to one quarter inch thick, a small serving of macaroni and cheese, canned turnip greens, occasionally a salad with Italian dressing, sometimes white or pinto beans, tea, a biscuit or serving

2

of cornbread, and a dessert consisting of a small serving of cake or two cookies, approximately 3 inches in diameter.

Defendant testified that the food portions were consistently small, and that he became hungry shortly after each meal. He testified that food at the detention facility had improved noticeably in the autumn of 2009 following this Court's ruling in the Williams case.[1] Specifically, following this ruling the facility began to serve hot lunches, whereas before the detainees had received cold sack lunches. Defendant Brumbach testified that despite the perceptible improvement in the food at the facility following the Williams ruling, he had noticed that the serving portions and the variety of food offered had diminished beginning in mid-January 2010. Defendant complained that turkey, in one form or another, was served at the facility five or six times each week. Despite his complaints about the portion size and lack of variety of the food, defendant testified that he had never witnessed spoiled or moldy food being served at the facility.

Defendant testified that he is six feet, three inches tall. He initially testified that he has not lost weight since his confinement in RCDF, and later explained that, according to the scales used at the facility to weigh him periodically, he has consistently weighed 174 pounds while in the facility. Defendant expressed skepticism about the accuracy of the facility's scales,

---

[1] United States v. Williams, 2009 WL 4824940 (M.D. Tenn., Oct. 26, 2009).

3

which he testified showed his weight at 174 pounds when he was weighed most recently approximately two weeks before the hearing. Defendant testified that, based upon the way he felt, he believed that his actual weight was nearer 160 pounds. During her brief testimony, defendant's wife testified that defendant's ribs, face and hands "look skinnier now than he was when he went" into custody at RCDF.

**Medical Care**. Defendant testified that, probably because of lack of variety in his diet, he has become constipated, and has a bowel movement once approximately every five to seven days. He reported that he had complained of constipation on multiple occasions to the facility's medical personnel and they had, on different occasions, encouraged him to drink more water, had given him a laxative, and had provided him with phosphate soda. He testified that these measures provided by the facility afforded him relief from constipation for only "two or three days." He testified that he was reluctant to drink the water at the facility because it had "small white particles" floating in it. He conceded, however, that he was unaware of anyone who claimed that drinking the water had made him sick.

Defendant Brumbach also testified that he suffers from "sinus headaches"[2] "once every month or two." He stated that these

---

[2]Contrary to assertions in his motion, defendant Brumbach at the hearing denied that he suffers from migraine headaches. Instead, he testified that he has "sinus headaches" that he

4

headaches usually last no more than 24 hours, but that when he has one the pain is "unbearable."  Defendant stated that he obtains relief from his headaches by taking Ibuprofen.

Defendant stated that at RCDF an inmate can sign up for sick call only on Sundays, Tuesdays and Thursdays to be seen by medical personnel on the following day.  He stated that he had requested and had been given Ibuprofen for his headaches by the facility personnel, but that the facility did not permit inmates to store Ibuprofen in their cells.  He testified that he had attempted on one occasion to store four to six Ibuprofen tablets provided by the facility's clinic staff, but that these tablets were found on a routine cell search, and he was locked down for two days as punishment.

Defendant further testified that he suffers from a skin rash that itches and keeps him awake at night.  He testified that the facility medical personnel issued baby oil to him for a while, but they had stopped giving out baby oil to inmates and have told him that his rash is "just dry skin."  Defendant also reported that on one occasion he experienced a buildup of ear wax.  He testified that the facility's medical staff put "loosening drops" in his ears, but that they did not call him back to flush out these drops.

**Recreation/lockdown status**.  Defendant Brumbach testified that he is typically confined to his cell for all but five hours

---

associates with sinus congestion.

per day. When allowed out of his cell, he is confined to the pod area, which is furnished with tables and a television. He also is allowed out of his cell for meals. During periods out of his cell, he is allowed to walk around, but running is not permitted. Defendant complained that weights and a punching bag for exercise are not provided. In addition to the television, two decks of playing cards and dominoes are available to the detainees. There are usually twelve detainees out for recreation in the pod area at one time. Defendant testified that he and the other inmates are periodically locked down in their cells for disciplinary purposes. He testified specifically about one occasion when the misbehavior of one or two individuals caused the entire pod to be locked down for 24 hours except for showers. He conceded that the facility does not lock down inmates for no reason, but they sometimes lock down all detainees as discipline for the misbehavior of a few. Defendant testified that inmates are not allowed to touch the television. After an inmate violated this rule in order to increase the volume, RCDF took the television away for two weeks as punishment. Defendant Brumbach testified that RCDF has an outside recreation facility, but no one gets to use it, and that he is entirely confined to his cell and to the adjoining pod area.

**Visitation policies**. Defendant Brumbach further complained about the policies for visitation of detainees at RCDF. He testified that while at other jails inmates are separated from

6

visitors with a glass partition, at RCDF visitors and detainees can see each other by means of a webcam and a thirteen-inch video monitor. In addition, at RCDF, defendant Brumbach is not permitted to hold his infant daughter, although at other jails inmates are permitted to hold their infants during visitation. Defendant Brumbach did testify, however, that RCDF does not impose limits on attorney visits to detainees.

**Miscellaneous**. Defendant Brumbach testified that there is no law library at RCDF but they do have a copy of the Tennessee Code Annotated and that inmates are allowed to get copies of these statutes on request. However, the facility does not have a copy of the United States Code. Defendant further testified that the staff on occasion "plays favorites between state inmates and federal inmates." Sometimes his request for fingernail clippers and a pencil sharpener are ignored although he generally can use a pencil sharpener when out for recreation in the pod, except when it is being used by another inmate.

Summarizing, defendant Brumbach testified that he has been confined in approximately thirty jails and in two prisons, and that RCDF is "by far the worst" in terms of food, medical treatment and arrangements for visitation. He testified that he is "willing to do whatever it takes to get out of that jail," and that it makes him want to agree to plea conditions just as a means of getting out of RCDF.

7

## Analysis

As stated in the earlier referenced decision of <u>United States v. Williams</u>, 2009 WL 4824940 (M.D. Tenn. October 26, 2009), challenges to conditions of confinement by pretrial detainees are generally analyzed under the standards of the Due Process Clause of the Fifth Amendment. In contrast, such challenges raised by convicted prisoners are evaluated generally under the Eighth Amendment Cruel and Unusual Punishment Clause.

In the decision of <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979), the U.S. Supreme Court stated as follows:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

441 U.S. at 535. The Court recognized, however, that not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. The Court elaborated as follows:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. [ ] Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears

8

>           excessive in relation to the alternative purpose
>           assigned [to it]."

441 U.S. at 538 (internal citations omitted). Finally, the Court cautioned against courts intruding lightly into matters of prison administration:

>           Such considerations [preservation of internal
>           order, discipline and institutional security] are
>           peculiarly within the province and professional
>           expertise of corrections officials, and, in the
>           absence of substantial evidence in the record to
>           indicate that the officials have exaggerated their
>           response to these considerations, courts should
>           ordinarily defer to their expert judgment in such
>           matters.

441 U.S. at 547-48 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974).

With these general principles in mind, the Court considers defendant Brumbach's motion for an order directing the Marshal to transfer him to an alternative detention facility. Defendant alleges that the food portions he receives at RCDF are too small and lacking in variety. Detainees are constitutionally entitled to adequate food and nutrition. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Foster v. Runnels, 554 F.3d 807, 815 (9th Cir. 2009); United States v. Williams, 2009 WL 4824940 at *2 (M.D. Tenn. Oct. 26, 2009). Defendant Brumbach testified that the size of portions and the variety of foods served at RCDF improved significantly after this Court's ruling in the Williams case in the fall of 2009, and that the facility began serving hot lunches daily in place of the sack lunches that had been served previously.

9

Defendant further testified, however, that he had perceived a reduction in serving size and in the variety of food served beginning in mid-January 2010. Defendant testified that he becomes hungry soon after eating his meals and that the lack of variety in the food had caused him to become frequently constipated.

At the hearing defendant Brumbach testified that he had not lost weight while confined at RCDF. However, defendant later qualified that testimony by stating that, according to the scales used to weigh him periodically at RCDF, he had consistently weighed 174 pounds. Defendant testified that he did not believe that the facility's scales were accurate and that he thought, based wholly on how he felt, that his true weight was closer to 160 pounds. The Court notes that the Body Mass Index (BMI) for a person who is six feet, three inches tall, and weighs 174 pounds is 21.7, which falls well within a "normal" weight range for a person of defendant's height. www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/results_normal.html. In fact, defendant's weight based upon his own estimate of 160 pounds yields a calculated BMI of 20.0, also within the "normal" range for a person of his height.[3] Id. Defendant Brumbach did not offer to weigh at the hearing, and he appeared to the Court to be somewhat slender for his height, but

---

[3]According to the CDC website listed in the text above, a "normal" weight for a person who is six feet, three inches, tall ranges from 148 to 199 pounds.

10

not markedly so.  Defendant offered no evidence beyond his own testimony regarding the nutritional adequacy of the food served at RCDF.  The undersigned Magistrate Judge finds that this evidence is insufficient to support a finding that the food service at RCDF is constitutionally inadequate.

Defendant Brumbach testified that the medical care at RCDF has failed to relieve him of his chronic constipation.  He conceded that the facility's medical personnel had provided laxatives to him on multiple occasions, and that these medications afforded him relief for "two or three days."  He further testified that the facility staff had encouraged him to drink more water, but that he had declined to do so because of what he described as small white particles he had observed in the facility's water.  Defendant further testified that he suffered from a sinus headache "once every month or two."  He stated that the facility's medical staff provides him with Ibuprofen upon request, but that he is not allowed to maintain a supply of medication in his cell.  The facility holds "sick call" three days a week, but a detainee must sign up on the day before in order to see the medical staff.  Since defendant is unable to predict when a headache may arise, he is effectively prevented from obtaining Ibuprofen in a timely fashion.  Defendant Brumbach also complained about a skin rash and one occasion when facility staff failed to call him back to flush out

11

"loosening drops" they had placed in his ears following his complaints of ear wax buildup.

From the foregoing testimony, the undersigned Magistrate Judge is unpersuaded that the medical care provided defendant at RCDF falls below constitutional standards. The Court finds from the evidence that the facility's medical staff apparently responds to defendant's complaints of constipation, headaches and ear wax. Although the unpredictable incidence of defendant's sinus headaches may preclude timely treatment, their infrequent occurrence ("once every month or two") fails to rise to a constitutional violation.

Defendant Brumbach also complained about the lack of recreation opportunities at RCDF, the occasional lockdown imposed as disciplinary measures, and the visitation practices observed at the facility. The undersigned Magistrate Judge finds that these impositions do not rise to the level with which the Constitution is concerned. See <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977) ("There is, of course, a <u>de minimis</u> level of imposition with which the Constitution is not concerned.")

In summary, the evidence before the Court fails to persuade the undersigned Magistrate Judge that the various disabilities of which defendant Brumbach complains have been imposed for the purpose of punishment rather than for a legitimate governmental purpose or that defendant's conditions of detention otherwise violate constitutional standards.

12

For the above reasons, the undersigned Magistrate Judge finds that defendant's motion for an order directing the Marshal to transfer him to an alternative detention facility should be **DENIED**.

It is so **ORDERED**.

s/ John S. Bryant<br>
JOHN S. BRYANT<br>
United States Magistrate Judge