UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:09-cr-00227 |
| v. | ) | |
| | ) | Judge Campbell |
| BRIAN DAVID BRUMBACH | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S
MOTION FOR COMPASSIONATE RELEASE**

The United States respectfully requests that this Court deny defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (2018). Defendant has failed to demonstrate exceptional circumstances that would warrant relief, and his motion should therefore be denied[1]. In support, the United States submits the following.

**Background**

On May 23, 2009, a Metro Nashville Police Department officer responded to a report of a domestic dispute. (See Presentence Report ("PSR") ¶ 5). The victim indicated to the officer that defendant had threatened him with a revolver after the victim had spoken to defendant's girlfriend. *Id.* The officer then stopped defendant's car, arrested him, and found a loaded revolver in the car. *Id.* Defendant was subsequently federally indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. (PSR, ¶ 2).

Defendant's prior burglary convictions qualified as sentence enhancers under the Armed Career Criminal Act (ACCA), and he was sentenced to the mandatory minimum of fifteen years. The Sixth Circuit held in 2017 that burglary under Tennessee law did not qualify as an ACCA

---

[1] Because defendant is currently housed in a non-BOP facility, awaiting transfer, defendant does not have a BOP warden to whom he could submit a request for compassionate release. Therefore, under these facts the United States will not dispute that defendant has exhausted his administrative remedies.

"violent felony." *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc), *rev'd*, 139 S.Ct. 399 (2018). That ruling caused defendant's sentence to be reduced to time served, and he was released in June, 2018 after serving ten years. When the Supreme Court reversed *Stitt,* defendant's original sentence was reinstated, and in January, 2020, he returned to prison to serve the remainder of his sentence. Defendant has now moved the Court for compassionate release in light of his COPD and hypertension, and the COVID pandemic.

## Argument

### I. DEFENDANT HAS FAILED TO DEMONSTRATE EXTRAORDINARY AND COMPELLING CIRCUMSTANCES WARRANTING RELIEF

In general, a court may not modify a term of imprisonment once it has been imposed, except in certain narrow circumstances. *See* 18 U.S.C. § 3582(c). One such circumstance occurs if, after exhausting administrative remedies, a prisoner files a motion for compassionate release. A court may grant such a motion only if, after considering the § 3553(a) factors, the court finds that either "extraordinary and compelling reasons" warrant a reduction, or the defendant is at least seventy years old, and has served at least thirty years; in addition, the court must also find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement is set out at U.S.S.G. § 1B1.13. It prohibits courts from reducing a sentence unless the court determines that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). The sentencing commission also provides examples of "extraordinary and compelling circumstance[s]." The commission specifies that a terminal illness, defined as a serious and advanced illness with an end of life trajectory, such as advanced cancer, ALS, end-stage organ disease, or advanced dementia, qualifies. U.S.S.G. § 1B1.13. Other examples include a defendant who suffers from a serious

physical or medical condition, or a serious functional or cognitive impairment, or a defendant who is at least 65 years old and has experienced a significant deterioration in health as a result of the aging process. *Id.*

The movant bears the burden to demonstrate that he or she is eligible for a reduction. *United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014); *United States v. Kimbrell*, No. 3:19-cr-00064, 2020 WL 3972746, at *1 (M.D. Tenn. July 14, 2020) (Richardson, J.). To be faithful to the statutory language requiring "extraordinary and compelling" reasons, it is insufficient that defendant suffers from a chronic condition. Chronic conditions that can be managed in prison are not a basis for compassionate release. *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant with severe back injuries and epilepsy (*quoting United States v. Weidenhamer,* 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019))). Compassionate release is "rare" and "extraordinary," and is routinely denied. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. March 16, 2020).

Defendant fails to demonstrate that the extraordinary remedy of compassionate release is warranted for two reasons. First, defendant has not shown that his medical conditions and risk of infection warrant relief. His medical records demonstrate that his conditions are well managed, and his risk of infection does not appear high. Second, defendant's lengthy and serious criminal history demonstrates that release is unwarranted in light of his danger to the community and the factors set out in 18 U.S.C. § 3553(a).

**A) Defendant has not shown that his medical conditions and risk of infection warrant release.**

Defendant's motion should be denied because he has not demonstrated extraordinary and compelling reasons warranting release. As explained *supra*, under § 3582, a court may grant a

sentence reduction only if it determines that "extraordinary and compelling reasons" warrant relief, and that a reduction would be consistent with applicable policy statement issued by the sentencing commission. 18 U.S.C. § 3582(c)(1)(A)(i). Certain categories of medical conditions do qualify as "extraordinary and compelling" reasons for relief. U.S.S.G. § 1B1.13, cmt. n.1(A).

To justify a sentence reduction on the basis of a medical condition, a defendant must establish that his or her condition falls within one of the categories listed in the policy statement. As relevant here, the categories include "any terminal illness" and any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of these categories, and no other category applies, his or her motion must be denied.

The mere existence of the COVID pandemic does not fall into one of these categories. The categories encompass specific medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. 2020); *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. March 5, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify COVID-19 as an extraordinary and compelling reason with would be inconsistent with the statute and the policy statement.

Defendant has chronic obstructive pulmonary disease (COPD) and hypertension. The CDC notes that both conditions may increase risk for severe illness from COVID-19. *See*

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html;..
The CDC advises people with COPD to continue to take their current medications, and to avoid triggers that may worsen symptoms. *Id.*

Defendant's medical records demonstrate that his COPD has been well-managed in prison. The records, filed under seal, include those from defendant's last year in BOP custody, from mid-2017 to mid-2018, and his more recent records from his current incarceration at Tallahatchie.

While in BOP custody, defendant received access to several different medications to treat his symptoms, and is therefore able to comply with the CDC's recommendation for COPD patients to continue taking their prescribed medications. (*See* Sealed Medical Records, D.E. 125, page 3[2]). Additionally, an outpatient report from a visit shortly before his release in May 2018 concluded that defendant's "cardiomediastinal silhouette is within normal limits," his "lungs are clear," he had "no acute cardiopulmonary disease," and his "heart size [is] normal." (*Id*. at 159.) Repeated medical examinations in prison have revealed that defendant's conditions are well-managed, and that he does not exhibit and cardiac distress. (*Id*. at 20, 25, 45.) It appears that defendant's medical conditions are well-managed in prison, and he does not suggest to the contrary, beyond a vague assertion that "[Defendant] cannot provide self-care . . . while in custody."

Defendant's more recent records indicate that defendant has not made a single complaint for COPD-related issues, on the contrary his complaints have been for acid reflux, dental issues, and dry scalp. (*Id.* at 190-297). The records indicate no respiratory problems. *Id.* at 194. And when defendant had elevated blood pressure during a sick visit for a sore tooth, defendant himself denied any history of high blood pressure (*See Id.* at 195). On July 7, 2020, defendant completed a self-

---

[2] Because this sealed document is not yet docketed, citations refer to internal page numbers.

assessment of his medical condition and indicated that he is in good health, and that there have not been any changes to his general health in the last year. *Id.* at 204.

Defendant's medical condition therefore does not fall into any of the medical categories recognized by the Sentencing Commission. First, COPD is unquestionably not a terminal condition comparable in severity to advanced-stage cancer or ALS. U.S.S.G. § 1B1.13 cmt. n.1(A)(i). Second, defendant's COPD is not a "serious physical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility." As discussed *supra*, defendant's medical records indicate that his COPD is well-managed in prison. Defendant's medical conditions therefore do not fall within any of the categories which would permit compassionate release, and his motion should be denied.

**B) Conditions at the Correctional Facility in which Defendant is incarcerated do not warrant compassionate release.**

Defendant fails to demonstrate that the conditions of the correctional facility in which he is housed justify compassionate relief. Circumstances so extreme as to totally eliminate the ability of prisoners to provide self-care are scarcely conceivable even in the abstract, and the prison where defendant is incarcerated has taken extensive steps to minimize COVID risk.

Tallahatchie County Correctional Center, where defendant is incarcerated, houses over 1,500 inmates. *See* Exhibit 2 to D.E. 113. As of July 23, 2020, the facility had 292 inmates on watch or in quarantine due to COVID concerns. *Id.* All new inmates are placed on quarantine for 14 days upon arrival. If an inmate is sent to an emergency room or to an offsite appointment, the inmate is quarantined for 14 days upon return. *Id.* The facility has also provided marks to inmates, added deep cleaning schedules to inmate housing schedules, and instructed inmates on the importance or social distancing and masks. *Id.* All staff and visitors are screened, including being questioned and having their temperatures checked, and must wear masks within the facility. *Id.*

The facility has taken rigorous steps to ensure the health of its inmates, and to minimize the risk of COVID transmission. Nothing in the environment hinders defendant's ability to carry out self-care within the facility, as would be required to grant relief under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Defendant's motion should therefore be denied.

### C) Defendant's criminal history does not support relief.

Defendant's lengthy criminal history shows that he does not merit relief under the § 3553(a) factors. Under the applicable policy statement, a court must deny a sentence reduction unless it determines that the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Courts must also consider the § 3553(a) factors, "as applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A). As this Court knows, these factors include the need to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553 (a)(2)(C). Additionally, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for release. U.S.S.G. § 1B1.13 cmt. n.3.

Defendant's long criminal history demonstrates that he still presents a danger to others and to the community, and that there remains a need to protect the public from any further crimes. As discussed *supra*, defendant's criminal record contains no fewer than a dozen charges of aggravated burglary. See PSR, ¶¶ 22-44. . It also includes multiple criminal trespassing, multiple counts of driving without a license, multiple different drug offenses, and a count of theft. *Id.* With the exception of a single span of nine years after his parole from his burglary sentence, from the time of defendant's first conviction as an adult in 1990, he has been unable to go more than, at the most, one or two years without committing an offense. *Id.* For example, during the 1990s, defendant was arrested fourteen times. *Id.* During that span, with the exception of the 1997-2000, when he was in custody and then on parole, he was arrested at least once each and every year except for 1992

and 1994. *Id.* Between 2007 and 2009, when his current sentence began, defendant was arrested seven times. *Id.*

Defendant has also demonstrated an inability to comply with other legal obligations besides the basic responsibility to obey the law. As of 2009, defendant was approximately $20,000 in arrears on child support. PSR, ¶ 53. Defendant also indicated that he had a lengthy history of substance abuse, including relapses despite participation in multiple substance abuse treatment programs. PSR, ¶ ¶60-62.

The fact that defendant lived for one and a half years lawfully between his release and his return to custody in January 2020 is therefore not a sign of rehabilitation. It is merely another episode in a pattern, wherein defendant lives lawfully for approximately a year before being arrested again. Even were the Court to interpret this relatively short span as demonstrative of rehabilitation, it is insufficient to warrant relief. The Sentencing Commission states explicitly that rehabilitation is not an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13 cmt. n.3. Defendant's criminal history demonstrates that he does constitute a danger to the community. His motion should therefore be denied.

Defendant's motion should be denied because he has failed to demonstrate extraordinary and compelling circumstances that warrant relief, and because he does still present a danger to the community. Defendant's medical conditions are not terminal. They are being managed well within the prison environment, and the facility where he currently resides has undertaken rigorous anti-COVID protocols. Finally, defendant's long criminal record and habit of recidivism demonstrate that he still poses a danger to the community. For all of these reasons, he fails to satisfy the statutory requirements for relief, and his motion should be denied.

## Conclusion

For the foregoing reasons, the United States therefore respectfully submits that defendant's motion should be denied.

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney for the
Middle District of Tennessee

*s/ Brooke K. Schiferle*
BROOKE K.SCHIFERLE
Assistant United States Attorney
110 9th Avenue South, Suite A-961
Nashville, TN 37203-3870
(615)736-5151

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2020 I electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, and notice will be sent electronically to defendant's counsel of record.

*s/ Brooke K. Schiferle*
BROOKE K.SCHIFERLE
Assistant United States Attorney
